UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ROSALIE BARRON, an individual; and ANGELA PERALTA, an individual,

    Plaintiffs,

    v.

WAL-MART STORES, INC., a Delaware Corporation; WAL-MART ASSOCIATES, INC., a Delaware Corporation; and DOES 1 through 20,

    Defendants.

Case No.  2:15-cv-03616-JAK-AS

**ORDER RULING ON DEFENDANT'S EVIDENTIARY OBJECTIONS TO PLAINTIFF'S EVIDENCE IN SUPPORT OF HER OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Wal-Mart Stores, Inc. submitted a Statement of Evidentiary Objections. The Court rules on the objections as follows:

| Declaration/Testimony of Rosalie Barron (ECF No. 43-2) | Objection | Ruling |
|---|---|---|
| 1[1].  I am a party to this action, and have personal knowledge of the following facts and, if called as a witness, could and would testify competently thereto under oath.  2.  I was hired by defendant Wal-Mart Stores, Inc. ("Wal-Mart") on May 14, 2003 as an optician at Wal-Mart's Pico Rivera, California store location (the "Pico Rivera store").  3. The Pico Rivera store was assigned number 2886.  4.  I have always worked full-time during my employment at the Pico Rivera store's Vision Center (the "Vision Center").  5. I worked in the Vision Center for over eleven years.  My last day of employment was September 13, 2014.  6.  The Vision Center was open from 9:00AM to 9:00PM, and later the closing | | |

[1] The actual paragraph numbers have been maintained for ease of reference. The numbers to the objectionable evidence are bolded.

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

CASE NO. 2:15-CV-03616-JAK-AS
ORDER RE EVIDENTIARY OBJECTIONS

| Declaration/Testimony of Rosalie Barron (ECF No. 43-2) | Objection | Ruling |
|---|---|---|
| time was changed to 8:00PM.  7  During my entire employment working in the Vision Center, I have never seen it close, not even for a minute- during its regularly scheduled business hours. During my eleven years working for Wal-Mart, [**1**. the management's practice at the Pico Rivera store was to never close the Vision Center during its regularly scheduled business hours for any reason.]  8. As an optician my duties included dispensing glasses and contact lenses, checking and confirming prescriptions with the optometrist and the insurance companies - if any, ensuring that lenses and contacts were made in conformity with the job orders, providing customer training on the proper use and care of glasses and contact lenses, | 1.  Lack of foundation. F.R.E. 602. | 1.  Overruled |

| Declaration/Testimony of Rosalie Barron (ECF No. 43-2) | Objection | Ruling |
|---|---|---|
| resolving customer issues either in person or over the phone, performing repairs on optical items, taking inventory of Vision Center stock, processing customer orders through a computerized program called the Best Optical Selling System ("BOSS"), and processing customer payments for sales made at the Vision Center. Payments by customers could be made in cash, by credit/debit card or by use of a Wal-Mart gift card.  9.  Angela Peralta was the Vision Center manager and my direct supervisor during the entirety of my employment at Wal-Mart.  10.  The Vision Center had always been a very busy department, but starting in 2013 the volume of customers, short-handed staff, [2. discouragement from management, and the fact that | 2.  (A) Exclude under the Sham Declaration Rule. *Yaeger v. Bowlin*, | 2. Sustained |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

| Declaration/Testimony of Rosalie Barron (ECF No. 43-2) | Objection | Ruling |
|---|---|---|
| work hours were dictated by sales numbers, would make the working conditions very difficult for the employees to take compliant meal and rest breaks.] | 693 F.3d 1076, 1080 (9th Cir. 2012). (B) Exclude under the Previously Undisclosed Theory Rule. *Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989, 992 (9th Cir. 2006). | |
| 11. [**3**. Starting in 2013, Wal-Mart's District Manager Tammi Sherman who oversaw the Vision Center, and was Ms. Peralta's direct supervisor, began to pressure me not to take meal or rest breaks.  For example Ms. Sherman told Ms. Peralta and I both personally and in an email, that we were never to close the Vision Center.  Thus, many times, especially on a Sunday, I would work the Vision Center alone, and since closing the Vision Center even temporarily was not allowed, I could never | 3.  (A) Exclude under the Sham Declaration Rule. *Yaeger v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). (B) Exclude under the Previously Undisclosed Theory Rule. *Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989, 992 (9th Cir. 2006). | 3.  Overruled |

| Declaration/Testimony of Rosalie Barron (ECF No. 43-2) | Objection | Ruling |
|---|---|---|
| take a meal or rest break.] | | |
| 12.  Ms. Sherman also coerced, pressured, or created incentives for me and other Vision Center associates not to take meal or rest breaks.  Specifically, on the mornings I opened the Vision Center, I was responsible for printing up a document called the Daily Sales Report ("Sales Reports") reflecting sales each Vision Center associate was responsible for during the preceding day, and giving it Ms. Peralta so we could discuss it. The Sales Report reflected the average sale in dollars each associate was responsible for per transaction, the total dollar amount each associate sold during the preceding day, what specific items were being sold, how many items were sold, and whether there were any partial orders that needed to be paid for | | |

| Declaration/Testimony of Rosalie Barron (ECF No. 43-2) | Objection | Ruling |
|---|---|---|
| by customers.  13.  [**4.** Based upon these Sales Reports ] Ms. Peralta and Ms. Sherman constantly pushed me to do four things in my sales duties: 1) increase my average sale amount per transaction, 2) always sell "double" of any item I sold to a customer, 3) push "Transitions" lenses as they were more expensive, and 4) always complete the orders on the BOSS system and take the customer's payment - no partial orders without payment were allowed. | 4.  (A) Exclude under the Sham Declaration Rule. *Yaeger v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). (B) Exclude under the Previously Undisclosed Theory Rule. *Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989, 992 (9th Cir. 2006). (C) Lack of relevance. F.R.E. 402. | 4.  Sustained |
| 14.  [**5.** Ms. Peralta and Ms. Sherman told me that when they made the Vison Center work schedule for the following week, they would cut work hours for those persons whose numbers they did not like in the Sales Reports.  As a result, I would constantly forgo meal and rest breaks in order to not lose sales, | 5.  (A) Exclude under the Sham Declaration Rule. *Yaeger v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). (B) Exclude under the Previously Undisclosed Theory Rule. *Wasco Products, Inc. v. Southwall Technologies,* | 5.  Sustained |

| Declaration/Testimony of Rosalie Barron (ECF No. 43-2) | Objection | Ruling |
|---|---|---|
| as that would result in reduced working hours for the following week, resulting in less pay to support me and my family. Other Vision Center associates told me they would forgo their meal and rest breaks so their hours would not get cut due to information contained on the Sales Reports.] | *Inc.*, 435 F.3d 989, 992 (9th Cir. 2006). (C) Hearsay (as to Other Associates). F.R.E. 802 | |
| 15.  [**6**. The policy of cutting work hours based upon the Sales Reports had a domino effect within the Vision Center.  I saw and was informed by other Associates that they would not take meal or rest breaks in order to maximize their sales numbers. As a result, all of the Vison Center Associates I worked with stopped taking meal and rest breaks so their work hours would not get cut due to reduced sales numbers.]  16.  [**7**. Ms. Peralta told me she had no choice but to | 6.  (A) Exclude under the Sham Declaration Rule. *Yaeger v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). (B) Exclude under the Previously Undisclosed Theory Rule. *Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989, 992 (9th Cir. 2006). (C) Hearsay. F.R.E. 802. | 6.  Sustained |
| | 7.  (A) Exclude under the Sham Declaration | 7. Sustained |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

| Declaration/Testimony of Rosalie Barron (ECF No. 43-2) | Objection | Ruling |
|---|---|---|
| cut Associate work hours based on the Sales Reports, due to pressure she received from Ms. Sherman.  17.  In addition, Ms. | Rule. *Yaeger v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). (B) Exclude under the Previously Undisclosed Theory Rule. *Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989, 992 (9th Cir. 2006). | |
| Peralta told me she utilized the Sales Reports as a measurable criteria in preparing my performance evaluations. (Attached hereto as Exhibit A are true and correct copies of my performance evaluations during my employment at Wal-Mart.) Thus, my sales numbers directly impacted my performance evaluations which would also bear upon any potential discipline I could receive for a sub-par performance evaluation as reflected by my sales.]  18. | | |

| Declaration/Testimony of Rosalie Barron (ECF No. 43-2) | Objection | Ruling |
|---|---|---|
| For example, in my May 14, 2012 Performance Evaluation that was prepared and given to me by Ms. Peralta, and produced in discovery in this matter, under the "Strengths" section, Ms. Peralta stated that "Rosalie's sales are very good and she is always trying to build and increase sales in the vision center." (See Exhibit A, Bates No. WMT 00024)  19.  [8. I was informed by Ms. Peralta that in the 2012 to 2014 time period, the Pico Rivera Vision Center was financially - the highest earning Vision Center within the district and won numerous awards during that time recognizing such.]  20.  Starting in 2013, if I staffed the Vision Center alone, I could not physically take a meal or rest break at all as I was directed to never close the Vision Center during regular business | 8.  Lack of relevance. F.R.E. 402. | 8.  Sustained |

| Declaration/Testimony of Rosalie Barron (ECF No. 43-2) | Objection | Ruling |
|---|---|---|
| hours, thus I had to remain on-duty in the Vision Center at all.] times.  21.  [**9**. Starting in 2013, if I attempted to take a meal or rest break Ms. Peralta, would discourage me from taking one. Ms. Peralta would say things like "Really? You're taking a break? Right now just isn't a good time" or "just take it later so you can finish these customer orders." On many occasions, I would inform Ms. Peralta that I was taking a restroom break, only to be paged by her over the store intercom within the first five minutes directing me to return to the Vision Center even while I was in the restroom.]  22.  [**10**. Starting in 2013, if I attempted to take a meal or rest break Ms. Peralta would call my cell phone within just minutes of attempting to leave the Vision Center to ask me questions about work-related | 9.  (A) Exclude under the Sham Declaration Rule. *Yaeger v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). (B) Exclude under the Previously Undisclosed Theory Rule. *Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989, 992 (9th Cir. 2006).<br><br>10.  (A) Exclude under the Sham Declaration Rule. *Yaeger v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). (B) Exclude under the Previously Undisclosed | 9.  Sustained<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>10.  Sustained |

| Declaration/Testimony of Rosalie Barron (ECF No. 43-2) | Objection | Ruling |
|---|---|---|
| issues, or directing me to come back to the Vision Center to assist with customers.] 23. [**11**. Also starting in 2013, other Vision Center associates would discourage me from taking a meal or rest break. If I told an Associate that I was going to take a meal or rest break, ~~I would often be told not to,~~ due to the volume of customers. The other Associates would often plead that they could not handle the significant number of customers without my support. ~~More importantly I understood that losing sales was simply not acceptable, and would result in less work hours the following week. So I would have no choice but to forgo taking my meal and rest breaks.~~] 24. From 2003 | Theory Rule. *Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989, 992 (9th Cir. 2006).<br><br>11. (A) Exclude under the Sham Declaration Rule. *Yaeger v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012).<br>(B) Exclude under the Previously Undisclosed Theory Rule. *Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989, 992 (9th Cir. 2006).<br>(C) Hearsay. F.R.E. 802. | 11. Sustained in Part as to crossed out statement |

| Declaration/Testimony of Rosalie Barron (ECF No. 43-2) | Objection | Ruling |
|---|---|---|
| until 2012, I clocked-in to begin my work shift by swiping my employee identification badge through a computerized time clock located in the back of the Pico Rivera store.  25.  Later on, in the 2012 to 2013 time period, I was informed by Ms. Peralta that computer programs were installed at the Pico Rivera's Customer Service podium, the Vision Center, and the Personnel Department, where employees could also use those computers to clock-in or out of their shifts, or for taking a meal period. During this same time, the time-clock in the back of Pico Rivera store could still be used to clock-in and out of my work shifts, and for a meal break.  26.  I was authorized by Ms. Peralta to use the Vision Center's computer to make what were known as Electronic Time Adjustments | | |

| Declaration/Testimony of Rosalie Barron (ECF No. 43-2) | Objection | Ruling |
|---|---|---|
| (ETAs).  ETAs are when an employee would go into the time keeping system to make manual adjustments to their time records. 27.  [**12**. In 2013, I was authorized by Ms. Peralta to make ETAs to my | 12.  Exclude under the Sham Declaration Rule. *Yaeger v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). | 12.  Overruled |
| time in the system.]  28.  [**13**.  In 2013, due to the lack of staffing, high demands of the Vision Center, discouragement from management, and pressure to make my sales or face less work hours, if I could not clock-out in time for a meal break by the fifth hour, Ms. Peralta would instruct me to make an ETA in the system to demonstrate that I clocked out before the fifth hour, or took my full meal break.]  My meal break was scheduled to last one hour.  If I did not clock-out | 13.  (A) Exclude under the Sham Declaration Rule. *Yaeger v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). (B) Exclude under the Previously Undisclosed Theory Rule. *Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989, 992 (9th Cir. 2006). | 13.  Sustained |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:15-CV-03616-JAK-AS
ORDER RE EVIDENTIARY OBJECTIONS

| Declaration/Testimony of Rosalie Barron (ECF No. 43-2) | Objection | Ruling |
|---|---|---|
| by the fifth work hour, I would be subject to discipline by Wal-Mart.  29.  In 2013 if I was able to timely get to the back of the Pico Rivera store to swipe my badge to clock out, I would simply return to the Vision Center and continue working through my meal break. 30.     During my employment, the Pico Rivera store maintained a computerized system where the Vision Center register automatically logged me off at the five (5) hour mark of my shift to reflect that a meal break be taken at that point.  There was only one register in the Vision Center during my time there. Starting in 2013, when the fifth hour of my shift hit, many times, another manager from within the Pico Rivera store would come over to the Vision Center, and log me back into the register | | |

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

| Declaration/Testimony of Rosalie Barron (ECF No. 43-2) | Objection | Ruling |
|---|---|---|
| with their own employee identification number and password, so I could continue working as 1 directed. **[14.** Thus, many register transactions occurred and were documented on the Vision Center register for Wal-Mart managers who were not actually performing those transactions.]** 31. **[15.** I complained to numerous supervisors and managers at the Pico Rivera store about my inability to take meal and/or rest breaks including, District Manager Tammi Sherman, Assistant Manager Chris Mason, Assistant Manager Amado Villegas, Customer Service Manager ("CSM") Rosie Herrera, Vision Center Manager Angela Peralta,] and another CSM named Esther ("Esther") whose last name I do not recall. 32. In 2013 I complained two | 14. Lack of foundation. F.R.E. 602.

15. (A) Lack of relevance. F.R.E. 402. (B) Exclude (Peralta) under the Sham Declaration Rule. *Yaeger v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). | 14. Sustained

15. Overruled |

| Declaration/Testimony of Rosalie Barron (ECF No. 43-2) | Objection | Ruling |
|---|---|---|
| times to Ms. Sherman in private that I was unable to take meal and rest breaks during the week due to the significant number of patients we had to see, and that on Sunday, when 1 staffed the Vision Center alone, I had no coverage to allow me to take a break.  Ms. Sherman responded that if I needed to use the restroom to just call a cashier to cover me.  However, I was trained that in order to work in the Vision Center, a person needed training in HIPPA, and either be licensed by the Medical Board, or with sufficient optical education or training to work under another licensee's license in order to dispense lenses or contacts, or to address related concerns in those areas to the public.  33.  Ms. Peralta trained me that an unlicensed or untrained cashier could not | | |

| Declaration/Testimony of Rosalie Barron (ECF No. 43-2) | Objection | Ruling |
|---|---|---|
| provide proper coverage in the Vision Center so I could take a meal or rest break as it was a specialized area requiring specific optical knowledge and training.  34. In the beginning of 2014 I also complained to Assistant Manager Chris Mason two times that I was unable to take meal or rest breaks at the Vision Center.] 17. [**16**. Mr. Mason came to the Vision Center in early 2014 to ask how we were doing.  I told Mr. Mason that I was tired, and he asked if I had taken a lunch yet.  I responded to him that it was not time for a meal period yet, but that I had no choice but to skip my rest break and had to run to the restroom and come right back which took less than 5 minutes.  Mr. Mason responded by saying "oh."]  Mr. Mason did not arrange for an ETA in order to | 16.  Hearsay. F.R.E. 802. | 16. Overruled |

| Declaration/Testimony of Rosalie Barron (ECF No. 43-2) | Objection | Ruling |
|---|---|---|
| receive premium pay compensation for my missed rest break.  35.  [**17**. On another occasion, Mr. Mason came by the check up on the Vision Center.  While still visibly working, I complained that I had no coverage to take a meal break at the Vision Center since I was alone, and that the register had logged me off since my fifth-hour meal break had started.  Mr. Mason then logged me back on to the register with his own personal employee identification number and password, so I could continue working through my meal break.]  [**18**. Thus, all of the register transactions that were performed would show that Mr. Mason was the person who made those specific transactions.  Mr. Mason did not arrange for an ETA in order to receive premium pay compensation for my missed | 17. Lack of relevance. F.R.E. 402.<br><br>18.  (A) Lack of foundation. F.R.E. 602. (B) Exclude under the Sham Declaration Rule. *Yaeger v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). | 17. Overruled<br><br>18. Sustained |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:15-CV-03616-JAK-AS
ORDER RE EVIDENTIARY OBJECTIONS

| Declaration/Testimony of Rosalie Barron (ECF No. 43-2) | Objection | Ruling |
|---|---|---|
| meal break.]  36. [**19**. Beginning in 2014 I complained to Assistant Manager Amado Venegas at least two times that I did not have sufficient coverage in the Vision Center to use the restroom.  Mr. Venegas did not respond to me.  37.  Starting in 2013 I complained to Customer Service Manager Rosie Herrera on an almost weekly basis that I could not take a meal or rest break.  38.  Starting in 2013, I complained to Vision Center associates Anthony Carter and Carol Diaz on an almost daily basis that I was unable to take a meal or rest break.  39. In fact, in 2013-2014 Ms. Villegas, Ms. Herrera, Ms. Peralta, and Esther would log me on to the Vison Center register with their own employee identification numbers and passwords, when the register would log me off automatically | 19.  Lack of relevance. F.R.E. 402. | 19.  Overruled |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

| Declaration/Testimony of Rosalie Barron (ECF No. 43-2) | Objection | Ruling |
|---|---|---|
| at my fifth work hour.  40. In 2013-2014 Mr. Villegas and Mr. Mason logged me on to the Vision Center register two to three times each with their own personal employee identification numbers and passwords, when I was logged off automatically at my fifth work hour so I could continue to work.  41.  In 2013-2014, Ms. Herrera and Esther logged me on to the Vision Center register about three to four times a week with their own personal employee identification numbers and passwords when I was logged off automatically at my fifth work hour, so I could continue to work.  42.  Ms. Peralta logged me on to the Vision Center register about three to four times a week with her own personal employee identification number and password when I was logged off | | |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

| Declaration/Testimony of Rosalie Barron (ECF No. 43-2) | Objection | Ruling |
|---|---|---|
| automatically at my fifth work hour, so I could continue to work.] 43. I estimate that every single shift I worked in 2013, [**20**. due to pressure, coercion, discouragement from management, or threats to cut my work hours, I was prevented from taking a full uninterrupted meal or rest break.] 44. I | 20. (A) Exclude under the Sham Declaration Rule. *Yaeger v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). (B) Exclude under the Previously Undisclosed Theory Rule. *Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989, 992 (9th Cir. 2006). | 20. Sustained as argument |
| estimate that during 2013, I worked approximately 256 shifts. 45. I estimate that every single shift I worked in 2014, [**21**. due to pressure, coercion, discouragement from management, or threats to cut my work hours, I was prevented from taking a full uninterrupted | 21. (A) Exclude under the Sham Declaration Rule. *Yaeger v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). | 21. Sustained as argument |

| Declaration/Testimony of Rosalie Barron (ECF No. 43-2) | Objection | Ruling |
|---|---|---|
| meal or rest break.]  46.  I estimate that during 2014, I worked approximately 197 shifts.  47.  In 2013, Ms. Sherman and Ms. Peralta told me a number of times that I was not allowed to work overtime, and if I did, I would be subject to discipline.  48.  [**22.** Despite the warnings not to work overtime, I was informed by Ms. Peralta that after the Vision Center closed for the evening, my job duties included sweeping the Vision Center, taking out the trash, organizing and cleaning the frames, putting trays away, processing all of the partial orders (through the BOSS | (B) Exclude under the Previously Undisclosed Theory Rule. *Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989, 992 (9th Cir. 2006). <br><br> 22.  (A) Exclude under the Sham Declaration Rule. *Yaeger v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). (B) Exclude under the Previously Undisclosed Theory Rule. *Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989, 992 | 22.  Sustained in Part as to crossed out statement |

| Declaration/Testimony of Rosalie Barron (ECF No. 43-2) | Objection | Ruling |
|---|---|---|
| system) we could not process during the day because we were too busy, taking documents with personal information on them to the back of the store for shredding, calling patients to inform them of the status of their orders, and conducting inventory as needed.  This often required me to work past my scheduled eight hours of on the clock work. As a result, I would clock out, and continue working so I would not accumulate overtime, ~~and receive discipline for it.~~ ~~49.  Although Ms. Peralta did not say specifically to work overtime off the clock in those specific words, in 2013 to 2014 Ms. Peralta would tell me things after I worked my eight hour shift such as, "hurry up just clock off and come back so we can finish up" or "just clock off and come back so we can get the Vision~~ | (9th Cir. 2006). | |

| Declaration/Testimony of Rosalie Barron (ECF No. 43-2) | Objection | Ruling |
|---|---|---|
| Center closed up, and ready for tomorrow." 50. Ms. Peralta personally knew my work schedule as she created it, and knew and understood when my shift ended, and that I was working off the clock after my shift had ended after 8 hours of working on the clock. Despite Ms. Peralta's knowledge that I worked overtime off the clock, she never told me not to do it, and in fact directed me to do it.] 51. I did work overtime on the clock from time to time during 2013-2014, however it was very minimal, and often amounted to just a handful of minutes over a two-week pay period. 52. I estimate that in 2013 I worked overtime off the clock approximately five hours per week, or about one hour per shift, and I worked about 256 shifts during that year. 53. I | | |

| Declaration/Testimony of Rosalie Barron (ECF No. 43-2) | Objection | Ruling |
|---|---|---|
| estimate that in 2014, I worked overtime off the clock approximately five hours per week, or about one hour per shift, and I worked about 197 shifts during that year.  54.  I reviewed the Time Clock Archive Reports ("TCAR") attached to Wal-Mart's motion for summary judgment.  [23.  Starting in 2013 and ending in 2014, almost all of the entries indicating I took an approximately one (1) hour meal break are inaccurate, because I had no choice but to clock out, and continue working through my break, or if I did not I would be subject to a cut in my work hours, and less pay.]  I have never received premium pay for these violations except for one instance on February 19, 2014.  55.  I reviewed Wal-Mart's evidence in support of its motion | 23.  (A) Exclude under the Sham Declaration Rule. *Yaeger v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). (B) Exclude under the Previously Undisclosed Theory Rule. *Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989, 992 (9th Cir. 2006). | 23.  Sustained as hearsay and argument |

| Declaration/Testimony of Rosalie Barron (ECF No. 43-2) | Objection | Ruling |
|---|---|---|
| for summary judgment, including my deposition transcripts attached to the declaration of attorney Mitchell Wrosch.  Wal-Mart states that in my deposition I testified that I worked overtime, and was paid for it.  (See Wrosch Declaration, Exh. B, Baron Depo., p. 39:2-7)  The TCARs Wal-Mart submitted to the Court, indicate that from time to time in 2013 to 2014 I worked overtime on the clock, and received payment for that time, although it was usually just 10-15 minutes per two-week pay period.  I do not dispute that.  However, I also worked significant time off the clock during that period of time, and never received compensation for it.  56.  During my deposition, I informed the examining attorney Cheryl Johnson-Hartwell that I worked off the clock without | | |

| Declaration/Testimony of Rosalie Barron (ECF No. 43-2) | Objection | Ruling |
|---|---|---|
| receiving compensation. Ms. Johnson-Hartwell asked me if I was claiming that at the end of my work shift I would clock out, but continue to work, or if I did that only for my meal breaks.  I responded that I would also clock out at the end of my shift, and work overtime off the clock. (Attached as Exhibit B is a true and correct copy of relevant portions of my deposition transcript.) 57.  [**24.** I informed Ms. Peralta, and she told me she was aware that I worked off the clock during lunch, and worked overtime right after I had clocked-out of my shift for the evening.] 58. [**25.** I never stole | 24.  (A) Exclude under the Sham Declaration Rule. *Yaeger v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). (B) Exclude under the Previously Undisclosed Theory Rule. *Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989, 992 (9th Cir. 2006). 25.  Lack of relevance. | 24.  Overruled 25.  Sustained in |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

| Declaration/Testimony of Rosalie Barron (ECF No. 43-2) | Objection | Ruling |
|---|---|---|
| anything from Wal-Mart, or a Wal-Mart customer.  59.  I understand that Wal-Mart alleges that I took a pack of gum and paid for it with a Wal-Mart gift card with money loaded onto it belonging to a customer. ~~I would never knowingly use a customer gift card to purchase anything at the Vision Center for my own personal consumption, or for anyone else who was not the customer.~~  60.  On September 14, 2014 I was informed by a Wal-Mart investigator named Sylvia Razo that I was being terminated from employment for using a customer's Wal-Mart gift card to purchase a pack of gum in the Vision Center.  I denied ever doing such a thing to the investigator, and continue to | F.R.E. 402. | Part as to crossed out statement |

| Declaration/Testimony of Rosalie Barron (ECF No. 43-2) | Objection | Ruling |
|---|---|---|
| deny it to this day.  61.  On September 14, 2014 ~~in order to explain how Wal-Mart gift cards with customer money were being used to process sales in the Vision Center~~, I explained to the investigator that when the Vision Center was even busier than usual, we were always directed not to lose sales due to customers walking out.  To manage the high volume of customers, if a customer placed an order, but we lacked some information to allow the order to be finalized (such as missing prescription information) we were directed to continue to process the sale in another manner.  I was directed by management to enter the partial order information into the BOSS system based upon what information I had, and then give the customer a price for their order, for example - $200.  With | | |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

| Declaration/Testimony of Rosalie Barron (ECF No. 43-2) | Objection | Ruling |
|---|---|---|
| customer approval, I would then proceed to load customer money onto a Wal-Mart gift card in order to pay for the order later, as I had to wait for the missing information to come in to finalize the sale.  In the BOSS system, an order with incomplete information would not generate an order number, without an order number, I could not pull the order to the register to finalize the sale, nor could I electronically send the order information to one of Wal-Mart's optometry labs to begin working on the order.  Thus, I would ask the customer if it was acceptable to load a Wal-Mart gift card with the price of the order, and that when the missing information came in, I could complete the order on the BOSS system, generate an order number, and pull the order to the | | |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

| Declaration/Testimony of Rosalie Barron (ECF No. 43-2) | Objection | Ruling |
|---|---|---|
| register to pay for the order with the Wal-Mart gift card, and send the order to the lab to begin work on it.  Once the gift card was "zeroed out" to pay for the order, I would then place the gift card back in a white tray next to the register to be used again for that same purpose.  62.  The BOSS system would not allow the customer to just pay directly with a credit card, cash or check on an incomplete order, since the BOSS system would not allow the sale to go forward until the missing information came in (to generate an order number), and only then would the BOSS system communicate with the register to allow for the order to be paid.  63.  If the gift card maintained a balance on it, for example if the price was less than the $200 price that was given to the customer, I would | | |

| Declaration/Testimony of Rosalie Barron (ECF No. 43-2) | Objection | Ruling |
|---|---|---|
| place the gift card in a black tray along with the customer's order information, to be stored in cubbies in the Vision Center's office for safe keeping. ~~I was directed to inform the customer that they could either take the remaining balance on the Wal-Mart gift card with them, or we could just pay them cash.~~ Most of the time the customers would simply take the Wal-Mart gift card.  64.  We only utilized this process when the Vision Center was even busier than usual.  I was directed by District Manager Doug Meeks and Ms. Peralta (~~who also processed customer orders with the Wal-Mart gift cards in the manner I just described~~) so as not to lose sales. 65.  I was directed to use the procedure with the Wal-Mart gift cards, as I described in paragraphs 61-63 above, for | | |

| Declaration/Testimony of Rosalie Barron (ECF No. 43-2) | Objection | Ruling |
|---|---|---|
| customer convenience, ~~otherwise they would have to either come back to the Vision Center with the missing information, or would have to wait - sometimes hours, for us to attain the missing information to complete the order, then they would have to pay at that time. 66.~~ In addition, if I did not follow the procedure with the Wal-Mart gift cards described in paragraphs 61-63 above, the Daily Sales Reports would indicate a partial order was placed, but not paid for, and I would be verbally reprimanded for not having processed the sale ~~with customer money. This would count against me in terms of receiving less work hours the following week, and impact my performance evaluation.~~ 67. In 2013, I made Ms. Sherman aware of the Wal-Mart gift card procedure described above, and | | |

| Declaration/Testimony of Rosalie Barron (ECF No. 43-2) | Objection | Ruling |
|---|---|---|
| she never disagreed with it, or told me not to do it. | | |

IT IS SO ORDERED.

Dated: June 13, 2016

_____
John A. Kronstadt
United States District Court Judge

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles